**Marian Hassan REDA, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–3401.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 17, 2010.

Opinion filed: Feb. 19, 2010.

Aslan T. Soobzokov, Esq., Paterson, NJ, for Petitioner.

Zoe J. Heller, Esq., Thomas W. Hussey, Esq., Mark C. Walters, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, STAPLETON and NYGAARD, Circuit Judges.

## OPINION

PER CURIAM.

Marian Hassan Reda, a citizen of Lebanon, last entered the United States in 1990

as a visitor. In 2003, the Government charged her as removable for overstaying her visa. Reda conceded the charge, and applied for asylum, withholding, and protection under the Convention Against Torture ("CAT").

The first Immigration Judge ("IJ") who heard Reda's case took written submissions about the timeliness of the asylum application, and issued an oral decision that the application was time-barred and not subject to exceptions for filings beyond one year of arrival. R. 105–06. Reda, through counsel, subsequently affirmed that she was pursuing withholding and CAT relief only. R. 110. In her written decision, the next IJ cited the earlier decision on the asylum claim and denied the other then-pending applications for relief. The Board of Immigration Appeals ("BIA") dismissed Reda's subsequent appeal.

■ Reda, through counsel, presents a petition for review. We first address the scope of our jurisdiction over the petition. The Government moves to dismiss for lack of jurisdiction Reda's petition as it relates to the asylum question.[1] We have jurisdiction to review constitutional claims and questions of law but not factual or discretionary determinations concerning the timeliness of an asylum application. *See* 8 U.S.C. §§ 1158(a)(3) & 1252(a)(2)(D); *Sukwanputra v. Gonzales*, 434 F.3d 627, 634–35 (3d Cir.2006).

■ Reda at one point states that a decision on her asylum claim does not exist. Appellant's Brief 6. However, in context, we do not read that statement literally, particularly because she otherwise describes the IJ as refusing to apply an exception to the one-year filing deadline for asylum applications. Appellant's Brief 5–7. Also, the IJ's oral decision is in the record. R. 105–06. We do not have jurisdiction to review the substance of that ruling. *See* 8 U.S.C. § 1158(a)(3).

■ However, we will consider Reda's legal argument that how the IJ decided the asylum question—allegedly without a hearing, without giving reasons for the denial, and without a formal written ruling—violated her right to due process of law. We conclude that Reda's due process rights were not violated. Reda was provided with notice and the opportunity to be heard. When her counsel first proposed that Reda might be subject to an exception to the one-year deadline, the IJ allowed counsel time to prepare a memorandum of law on the issue and solicited a response from the Government. R. 102. The IJ provided reasons for her decision when she reconvened the hearing and explained that she had considered the briefs and was not persuaded by Reda's arguments. R. 106. Furthermore, to the extent that there was no formal ruling on asylum application, it was because Reda, or rather, Reda's counsel, did not further pursue an asylum claim before the IJ after the IJ's oral ruling. R. 110 (presenting an application for withholding and CAT relief and confirming that those two forms of relief were the only forms of relief then under consideration).

■ As to withholding of removal,[2] Reda argues that the IJ erred in failing to

---

1. Initially, the Clerk's Office also listed Reda's case for possible dismissal for jurisdictional defect because Reda filed an amended petition for review more than 30 days after the BIA's decision. However, we conclude that the amendment to explicitly cite the asylum decision after the time for filing ended does

not bar us from considering the petition. Reda timely filed her initial petition that identified the BIA decision and cited the withholding and CAT claims.

2. As the Government notes, Reda does not pursue her CAT claim in her petition, so we

take administrative notice of the state of affairs in Lebanon at the time of her hearing; erred in stating that she was without sufficient evidence to grant relief despite Reda's credible testimony; and erred in failing to review a report from Amnesty International. Reda also expresses concern about the IJ's statement, at one point in her hearing, that the IJ had another case in 50 minutes, as well as about how her illiteracy affected her testimony.

On review, we conclude that the agency did not err in concluding that Reda failed to show a 'clear probability' that she will be persecuted on her return to Lebanon. *See Kaita v. Attorney Gen. of the United States,* 522 F.3d 288, 296 (3d Cir. 2008). Reda claimed that she would be persecuted for two reasons. The first was that in 1983, she witnessed the murders of her uncles and cousins. R. 156. She was hiding in a washing machine when her relatives were killed, but she heard the attackers say that they were there to kill everyone in the house and she saw them. R. 154–56. The attackers, some of whom she could identify by name and as members of Hezbollah, heard her scream, so they knew she was a witness. R. 157 & 160. However, Reda stated that neither she nor anyone in her village knew the reason why the murders occurred. R. 164. Given this statement and the fact that Reda did not explain how any threat that she might face for witnessing the murders would be on account of a protected ground (and averred that neither she nor any family member ever belonged to a political organization, R. 234), it cannot be said that the evidence compels a conclusion contrary to the BIA's. *See Molina–Morales v. INS,* 237 F.3d 1048, 1052 (9th Cir.2001) ("[P]urely personal retribution is, of

course, not persecution on account of [a protected ground].")

Reda's second claim of persecution was that she may fall victim to an honor killing by a relative because she married an older man (a cousin) without her family's permission more than 20 years ago. However, the only relatives she identified as remaining in Lebanon are her two brothers, R. 165, with whom she speaks, R. 173, and who warned her not to return because they feared that she would face a threat from the persons or group who murdered her family members, R. 189. Her brothers also wrote a letter in support of her application in which they discussed Reda's efforts to emigrate to a location where she could find "self-dignity, freedom, and civil rights." R. 243. As the BIA noted, it is highly implausible that those same brothers who urged her to avoid a threat to her safety would be motivated to kill her on her return. Furthermore, with this claim, too, Reda failed to show that any persecution she might face would be due to her race, religion, nationality, membership in a particular social group, or political opinion.

Accordingly, we perceive no error in the IJ's conclusion that Reda had not met her burden of proof as to withholding despite Reda's credible testimony. We also reject Reda's remaining claims. Nothing in the record suggests that Reda's illiteracy or the IJ's scheduling of another case (or any other action by the IJ) prevented Reda from fully presenting her case. *See Fadiga v. Attorney Gen. of the United States,* 488 F.3d 142, 155 (3d Cir. 2007). Furthermore, despite Reda's claim to the contrary, the IJ did consider evidence of country conditions and news ac-

consider any issues relating to that claim waived. *See Lie v. Ashcroft,* 396 F.3d 530,

532 n. 1 (3d Cir.2005).

counts and take administrative notice of events in Lebanon, including Hezbollah activities. R. 85, 126–27, 182–83. However, this evidence of " '[m]ere generalized lawlessness and violence between diverse populations' " was insufficient to show that Reda would be targeted for persecution based on a protected ground. *Abdille v. Ashcroft,* 242 F.3d 477, 494–95 (3d Cir. 2001) (citation omitted).

For the reasons given, we grant the Government's motion and will dismiss Reda's petition to the limited extent that we lack jurisdiction over the factual determination that her asylum application was untimely. We will otherwise deny the petition for review.